STEPHAN A. BARBER (SBN 70070)
DANIEL P. McKINNON (SBN 234749)
ROPERS, MAJESKI, KOHN & BENTLEY
50 W. San Fernando Street, Suite 1400
San Jose, CA 95113
Telephone: (408) 287-6262
Facsimile: (408) 918-4501
Email: sbarber@rmkb.com

Attorneys for Plaintiffs

E-FILING  ADR

FILED

JAN - 7 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMES R. JOHNSON, TERRENCE SIMS, HEATHER SIMS, JOSLYN JOHNSON-BENNING, WILLIE BENNING, RICHARD GADDES, ROBERT HARTENSTEIN, DEB HARTENSTEIN, TODD D. SEVERIN, HANS P. SCHROEDER, STEPHEN SCHNEIDER, MICHAEL BILICH, LANCE GODDARD, JOAN GODDARD, MICHAEL MOFFETT, MARIAN MOFFETT, JAMES M. ROSS, WILLIAM SCHNEIDER, and VALERIE SCHNEIDER

Plaintiffs,

v.

STEVEN L. MYERS dba MYERS ENGINEERING INTERNATIONAL, INC. and MYERS ENGINEERING INTERNATIONAL, INC.

Defendants.

CASE NO. CV 11-00092 PSG

COMPLAINT FOR BREACH OF FIDUCIARY DUTY; MISREPRESENTATION AND CONCEALMENT; FRAUDULENT MISREPRESENTATION AND CONCEALMENT; NEGLIGENCE; BREACH OF CONTRACT; UNFAIR BUSINESS PRACTICES; SETTING ASIDE/CANCELLING TRANSACTION; CONVERSION; CLAIM TO RECOVER TECHNOLOGY FROM SHAREHOLDER; INJUNCTIVE RELIEF; AND DAMAGES

DEMAND FOR JURY TRIAL

Comes now Plaintiffs and complaints of Defendants, and each of them, as follows:

## PARTIES

1. At all times herein mentioned, Plaintiffs JAMES R. JOHNSON ("JOHNSON"), TERRENCE SIMS, HEATHER SIMS, TODD D. SEVERIN, HANS P. SCHROEDER, STEPHEN SCHNEIDER, MICHAEL BILICH, LANCE GODDARD, JOAN GODDARD,

RC1/5825768.1/BL1

- 1 -

**COMPLAINT**

MICHAEL MOFFETT, MARIAN MOFFETT, JAMES M. ROSS, WILLIAM SCHNEIDER, and VALERIE SCHNEIDER were and are residents of the State of California.

2. At all times herein mentioned, Plaintiffs JOSLYN JOHNSON-BENNING and WILLIE BENNING were and are residents of the State of New Mexico.

3. At all times herein mentioned, Plaintiff RICHARD GADDES was and is a resident of the State of New York.

4. At all times herein mentioned, Plaintiffs ROB HARTENSTEIN and DEB HARTENSTEIN were and are residents of the State of Vermont.

5. At all times herein mentioned, Defendant STEVEN L. MYERS ("MYERS") was and is an individual residing in the State of Florida.

6. Plaintiffs are informed and believe and thereon allege that MYERS is the sole or principal owner of Defendant MYERS ENGINEERING INTERNATIONAL, INC. ("MEI") and that MYERS does business under the name of MYERS ENGINEERING INTERNATIONAL.

7. At all times herein mentioned, Defendant MEI was and is a corporation duly organized and existing under the laws of the State of Florida and is a citizen of the State of Florida.

8. At all times herein mentioned, each Defendant was the agent, employee, servant, or representative of each other Defendant and was acting in the course and scope of such agency or employment at the time of the acts, conducts, and omissions alleged herein.

## JURISDICTION AND VENUE

9. Many of the acts, conduct, and omissions of the Defendants, as alleged herein, either occurred in, had an impact on, or affected the State of California and California residents. Further, some of the acts, conduct, or omissions alleged herein occurred in the Northern District of California. Accordingly, the Northern District of California has jurisdiction over the Defendants and the subject matter of this action.

10. Diversity of citizenship exists between all Plaintiffs and all Defendants in accordance with 28 U.S.C. Section 1332.

11. Venue is proper and appropriate in the Northern District of California because

some of the Plaintiffs reside in the Northern District of California and because some of the acts, conduct, or omissions of the Defendants alleged herein occurred in the Northern District of California.

## GENERAL ALLEGATIONS

12. Plaintiff JOHNSON and Defendant MYERS are the founders of the California corporation known as Myers-Johnson Inc. ("MJI"). All Plaintiffs herein are former stockholders of MJI. The former stockholders of MJI sold and transferred their shares of stock in MJI to Vortis Technology Ltd. ("VTL"), a corporation duly organized under the laws of Great Britain.

13. On April 5, 2002, the United States Patent Office issued a United States Patent to JOHNSON and MYERS for the Interferometric Antenna Array Technology ("The Antenna Technology"). The assignee of said patent was MJI. The actual patent was issued by the United States Patent Office on January 18, 2005.

14. In 2003-2005, MJI started raising money to market The Antenna Technology. MJI decided to launch the cell phone antenna product in 2004 and issued a product release on or about February 15, 2005.

15. On December 22, 2004, MYERS and MJI entered into a "Technology Assignment Agreement" ("TAA"). MYERS contributed $12,500 to MJI and received stock in return. MYERS assigned all right, title and interest in The Antenna Technology to MJI. In Section 4 of the TAA, MYERS undertook various responsibilities in assisting MJI with the technology. Section 10 states that the TAA will be construed pursuant to the laws of the State of California and the United States, and that the prevailing party in any action to enforce the TAA shall be entitled to recover reasonable attorneys' fees and expenses.

16. In 2005, the shareholders of MJI entered into a Stock Purchase Agreement ("SPA") with VTL whereby VTL purchased all of the stock of MJI. VTL became the assignee of The Antenna Technology that was assigned to MJI pursuant to the TAA. VTL and thus, its shareholders, also became the owner of all other assets of MJI.

17. At various times in 2005, 2006, and 2007, MYERS was on the Board of Directors of VTL and held high level management/officer positions. In addition, an associate of MYERS'

RC1/5825768.1/BL1 - 3 -

**COMPLAINT**

by the name of Stephen Burke was a member of the Board of Directors, the Chairman of the Board of Directors and Managing Director of VTL in 2006 and 2007. Plaintiffs are informed and believe and thereon allege that MYERS and Burke worked closely together and essentially had sole control of the daily affairs of VTL in 2006 and 2007.

18. MYERS was primarily responsible for developing The Antenna Technology so that it would be commercial and marketable as soon as possible. The Antenna Technology was the only product of VTL and the Plaintiffs invested very significant sums of money and time in VTL based on promises and representations by MYERS and others that The Antenna Technology was extremely valuable and would eventually be very profitable for VTL and its shareholders.

19. Plaintiffs are informed and believe and thereon allege that MYERS intentionally or willfully failed to perform his duties under the TAA in developing The Antenna Technology in a timely and satisfactory manner. Since MYERS was remiss in the development of The Antenna Technology, that necessarily substantially affected the ability of VTL to obtain funding/ financing, to market the product, and also increased its debts.

20. MYERS and MEI claimed that they were the primary creditors of VTL. MYERS and MEI wrongfully claimed that they were entitled to payment by VTL of approximately $1,000,000 USD. In fact, the claimed debt was completely or largely bogus and/or not due and payable at the times alleged by MYERS and MEI. Further, MYERS and MEI interchanged the separate debts that were allegedly owed to them and acted in concert to exaggerate and misrepresent the actual financial condition of VTL in 2006 and 2007. Further, MYERS represented and made statements to the Plaintiffs and others to the effect that VTL's financial condition was "dire," that VTL could not pay its debts, and that VTL was insolvent.

21. Plaintiffs are informed and believe and thereon allege that MYERS and Burke were in sole control of the management of VTL in all of 2007; that MYERS and Burke controlled the flow and accuracy of the information they wanted the Board of Directors and the shareholders to know or not know; and that MYERS and Burke were in a position to misrepresent the assets, liabilities, and financial condition of VTL. In addition, MYERS and Burke were in a position to determine the purported fair market value of The Antenna Technology, whether to have that

RC1/5825768.1/BL1 - 4 -
COMPLAINT

asset's value determined by a professional appraisal or not, to select an appraiser who would supposedly establish its value, and to influence the use or disposition of The Antenna Technology.

22. MYERS and Burke were in a position of trust and confidence as Directors and Officers of VTL and had the power and ability to influence the pace of the development of The Antenna Technology, fundraising, marketing, the ability to obtain revenue, the actual or apparent expenses, and the payment or non-payment of expenses.

23. On or about May 23, 2007, VTL's Board of Directors purportedly held a meeting in Glasgow, Scotland. According to unsigned minutes of that purported meeting, which were recently made available to Plaintiffs, the only person present at the meeting was Stephen Burke, who listed himself as the "Sole Director." The "Board of Directors" purported to declare VTL to be insolvent and it was resolved at the meeting that the courts of Great Britain would be petitioned to have VTL wound up as soon as possible. I. Scott MacGregor and Kenneth W. Pattullo of Begbies Traynor (Scotland) LLP were appointed as Joint Liquidators.

24. On a date unknown to Plaintiffs, MYERS and Burke retained counsel and caused a formal Liquidation Proceeding to be filed on behalf of VTL in the British court sitting in Scotland. Plaintiffs are informed and believe that a Liquidation Proceeding under British law is substantially similar to a bankruptcy proceeding under United States law and that the purpose of a Liquidation Proceeding is to pay off the debts of the corporation, liquidate the corporation's assets, and dissolve the corporation.

25. The Antenna Technology was the only significant asset of VTL and had very significant commercial value. MYERS and Burke claimed in some financial documents that the value of The Antenna Technology was "uncertain." In the same documents, MYERS and Burke claimed that the debt of VTL was approximately £1.811 million and that the single largest creditor of VTL was MEI, followed by MYERS individually.

26. At some point during said Liquidation Proceeding, The Antenna Technology was sold to MYERS/MEI pursuant to a sealed and essentially secret bidding process. MYERS/MEI apparently offered only £12,000 for The Antenna Technology. The Joint Liquidators were

instructed by MYERS and/or Burke to accept the offer of MYERS/MEI. In fact, £12,000 is less than 1% of the actual market value of The Antenna Technology.

27. Plaintiffs are informed and believe and thereon allege that the Defendants and Burke caused the auction of The Antenna Technology to be secret or not well publicized; that no official or qualified appraisal was obtained for the value of The Antenna Technology before the auction; and that it was preordained that MYERS/MEI would purchase The Antenna Technology because they were purportedly the largest creditors of VTL.

28. On January 15, 2008, Plaintiffs or their representatives were notified by the Joint Liquidators that MYERS/MEI purchased The Antenna Technology at said auction.

29. The Antenna Technology has very significant commercial value to any person who controls or purports to control the ownership and use thereof. MYERS and/or MEI have wrongfully taken control and purported ownership of The Antenna Technology for their own personal interests and in derogation of the interests of VTL and Plaintiffs. Plaintiffs are informed and believe and thereon allege that the Defendants are making commercial use of The Antenna Technology or intend to make commercial use thereof in the very near future.

30. Plaintiffs allege that the Defendants wrongfully and unlawfully "purchased" or took control of The Antenna Technology and that it is actually the property of VTL and Plaintiffs.

31. Plaintiffs have sustained very significant special and general damages in excess of $75,000 and have been deprived of the ownership and use of The Antenna Technology as a result of the acts, conduct, or omissions of the Defendants, as more fully explained herein and the dissolution of VTL.

### FIRST CLAIM FOR RELIEF — BREACH OF FIDUCIARY DUTY

32. Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 31 of this Complaint as if fully set forth herein.

33. At all relevant time, MYERS was a Director, Officer, and/or key employee of VTL. As such, MYERS owed a fiduciary duty to VTL and its shareholders. MYERS and Plaintiffs were at all times in a relationship of trust. MYERS had a duty to act in good faith and

RC1/5825768.1/BL1 - 6 -

to not take any action that might contravene the best interests of VTL and its shareholders. MYERS had an obligation to use his best judgment based on reliable information and to make business decisions on behalf of VTL and its shareholders in a wise and non-negligent manner. Further, MYERS was legally prohibited from availing himself of business opportunities that should be used by VTL and he was further prohibited by law from obtaining a personal benefit or profit before VTL had the opportunity to pursue the business undertaking. Moreover, MYERS had a legal duty not to compete with VTL or its shareholders or to attempt to obtain a personal profit at the expense of VTL and its shareholders.

34. MYERS, in conjunction with MEI and Burke, took various actions that essentially "tanked" VTL and at least gave the appearance that VTL was hopelessly insolvent and unable to continue in business. MYERS and others manipulated the situation so that MYERS/MEI could purportedly "purchase" The Antenna Technology; and avail himself of business opportunities that were rightfully those of VTL and its shareholders. In addition, MYERS conspired with Burke, MEI, and others to perform these breaches of fiduciary duty.

35. As a direct and proximate result of said breaches of fiduciary duty, Plaintiffs have been damaged in a sum according to proof in an amount in excess of $75,000. Further, Plaintiffs allege that they are entitled to appropriate and comprehensive injunctive relief including, but not limited to, the return to them of the ownership and control of The Antenna Technology and a disgorgement of all profits or other benefits which Defendants have obtained or realized from the use, commercialization, marketing, or sale of The Antenna Technology and/or any derivative product.

Wherefore, Plaintiffs pray for judgment as hereinafter set forth.

### SECOND CLAIM FOR RELIEF — MISREPRESENTATION AND CONCEALMENT

36. Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 35 of this Complaint as if fully set forth herein.

37. MYERS and/or MEI intentionally, recklessly, or negligently misrepresented to Plaintiffs and others the financial condition of VTL, VTL's ability to obtain funding to market

The Antenna Technology, the solvency or insolvency of VTL, the debts of VTL, the ability of VTL to pay debts that were actually legitimate, due, and owing, and the purported market value of The Antenna Technology.

38. The true facts, which were unknown to Plaintiffs, were that VTL was financially viable, that the debts claimed by MYERS and MEI were not legitimate, due, or owing, that it was unnecessary for VTL to go into liquidation, that the shares of VTL had significant value, that The Antenna Technology has great commercial value and should not have been sold, and that MYERS engaged in conduct and activities to intentionally "tank" VTL so that MYERS could obtain purported ownership and control of The Antenna Technology for his own selfish and personal reasons.

Wherefore, Plaintiffs pray for judgment as hereinafter set forth.

### THIRD CLAIM FOR RELIEF —
### FRAUDULENT MISREPRESENTATION AND CONCEALMENT

39. Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40. The misrepresentations and concealments alleged in Paragraph 37 were performed by Defendants, and each of them, fraudulently, intentionally, and for the purpose of deceiving Plaintiffs. Plaintiffs were in fact deceived and justifiably relied upon the misrepresentations and concealments of Defendants.

41. In performing the misrepresentations and concealments, Defendants, and each of them, were guilty of oppression, fraud, and malice, and acted with a conscious disregard of the rights of VTL and its shareholders, including Plaintiffs. Plaintiffs are entitled to an award of exemplary or punitive damages to punish Defendants, and each of them, and to make an example of them so that others will hopefully be dissuaded from acting in a similar manner. Plaintiffs request an award of exemplary or punitive damages according to proof and in a sum that is sufficient to punish the Defendants, and each of them.

Wherefore, Plaintiffs pray for judgment as hereinafter set forth.

## FOURTH CLAIM FOR RELIEF — NEGLIGENCE

42. Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 40 of this Complaint as if fully set forth herein.

43. MYERS, acting individually and through MEI, negligently performed the duties and obligations imposed upon him by law as a director and officer of a corporation and by the TAA. The acts, conduct, and omissions of Defendants were negligent, careless, and below the standard of care imposed upon corporate directors, officers, and key employees.

44. As a proximate and legal result of such negligence and carelessness, Plaintiffs have been damaged as described in this Complaint.

Wherefore, Plaintiffs pray for judgment as hereinafter set forth.

## FIFTH CLAIM FOR RELIEF — BREACH OF CONTRACT

45. Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 31 of this Complaint as if fully set forth herein.

46. Defendant MYERS had numerous obligations under the TAA, including, but not limited to, the obligation to use his best efforts to design and develop The Antenna Technology for the benefit of MJI, VTL, and Plaintiffs; to make said technology commercially viable and marketable; and to complete his performance of said contract as quickly and efficiently as possible so that The Antenna Technology could be marketed promptly and ahead of possible competitors.

47. Plaintiffs have performed any obligations imposed upon them by the TAA, with the exception of those obligations whose performance has been prevented or impeded by Defendants or otherwise excused.

48. MYERS breached the TAA by failing or refusing to perform his obligations thereunder and by acquiring purported ownership and control of The Antenna Technology through the unnecessary and bogus Liquidation Proceedings initiated by or on behalf of Defendants.

49.  As a further proximate and legal result of MYERS' breach of contract, Plaintiffs have suffered general and special damages according to proof and in a sum in excess of $75,000.

Wherefore, Plaintiffs pray for judgment as hereinafter set forth.

### SIXTH CLAIM FOR RELIEF — VIOLATION OF UNFAIR BUSINESS PRACTICES
### (California Business and Professions Code Sections 17200, et seq.)

50.  Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51.  Defendants, and each of them, have engaged in unfair competition with Plaintiffs by intentionally, recklessly, willfully, or negligently liquidating and bankrupting VTL and purporting to "purchase" The Antenna Technology, the only important asset of VTL and its shareholders.

52.  As a proximate and legal result of such unfair business practices and unfair competition, Plaintiffs have sustained actual and personal damage according to proof and in an amount in excess of $75,000.

53.  Plaintiffs allege that they are entitled to a disgorgement of any profits or benefits obtained by Defendants from such unfair business practices or unfair competition and other appropriate and reasonable injunctive relief.

Wherefore, Plaintiffs pray for judgment as hereinafter set forth.

### SEVENTH CLAIM FOR RELIEF — SETTING ASIDE/CANCELLING THE SALE OF THE ANTENNA TECHNOLOGY AND RETURN OF ALL RIGHTS AND INTERESTS IN SAID TECHNOLOGY TO PLAINTIFFS

54.  Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 40 and 42 through 53 of this Complaint as if fully set forth herein.

55.  On the basis of the allegations herein, Plaintiffs contend that the purported sale of The Antenna Technology was unlawful, unfair, and the product of Defendants' wrongdoing, breach of fiduciary duty, and self-dealing. Plaintiffs allege that in the interests of fairness and equity, and in order to prevent Defendants from profiting from their wrongdoing, the purported

sale of The Antenna Technology to Defendants should be set aside, cancelled, voided, or rescinded. Further, all ownership and rights in The Antenna Technology should be bestowed upon or returned to Plaintiffs, who are the rightful owners thereof. Plaintiffs request appropriate orders from the Court to accomplish the voiding or setting aside of said "sale" and returning ownership and control of The Antenna Technology to Plaintiffs.

Wherefore, Plaintiffs pray for judgment as hereinafter set forth.

### EIGHTH CLAIM FOR RELIEF — CONVERSION

56. Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 40 and 52 through 55 of this Complaint as if fully set forth herein.

57. At all relevant times, The Antenna Technology was the property of VTL and its shareholders. By the actions alleged herein, Defendants, and each of them, converted said property by wrongfully exercising control and taking possession thereof for a significant period of time. Plaintiffs did not consent to the taking and have been harmed thereby as described herein.

58. As a proximate and legal result of Defendants' conversion, Plaintiffs are entitled to return of the property or special damages according to proof in an amount in excess of $75,000 plus reasonable compensation for the time and money spent by or on behalf of Plaintiffs in attempting to recover the property.

Wherefore, Plaintiffs pray for judgment as hereinafter set forth.

### NINTH CLAIM FOR RELIEF — CLAIM TO RECOVER TECHNOLOGY FROM SHAREHOLDER

59. Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 31 of this Complaint as if fully set forth herein.

60. At the time of the Liquidation Proceedings, MYERS was a shareholder of VTL. VTL became a dissolved corporation as a result of the Liquidation Proceedings.

61. MYERS, either individually or acting through his controlled entity, MEI, received The Antenna Technology during the Liquidation Proceedings in Scotland. The primary asset of

VTL, The Antenna Technology, was not distributed pro rata to the shareholders of VTL, including Plaintiffs, as required by law.

62. Pursuant to California Corporations Code Section 2011(a)(1)(B), Defendant MYERS is required to return The Antenna Technology to his fellow shareholders, the Plaintiffs herein.

63. Plaintiffs request appropriate orders requiring Defendants to return the ownership and control of The Antenna Technology to Plaintiffs.

Wherefore, Plaintiffs pray for judgment as hereinafter set forth.

## TENTH CLAIM FOR RELIEF — INJUNCTIVE RELIEF

64. Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 40 and 42 through 63 of this Complaint as if fully set forth herein.

65. Defendants have breached their legal, ethical, and moral obligations to Plaintiffs by liquidating and dissolving VTL and purportedly acquiring the ownership and control of The Antenna Technology. Defendants continue to purportedly own, control, and make use of The Antenna Technology, even though it is the rightful property of Plaintiffs as the shareholders of VTL.

66. Plaintiffs have no adequate remedy at law and wish to avoid a multiplicity of actions. Plaintiffs request some or all of the following preliminary and permanent injunctive orders:

(a) An order prohibiting the Defendants from making further use of The Antenna Technology or any similar or derivative technology pending trial;

(b) An order requiring the deposit of all revenue or profits earned by Defendants from the use, commercialization, or exploitation of The Antenna Technology, either in the past or in the future, into an interest-bearing trust account managed and controlled by the Court pending trial;

(c) An order requiring the Defendants to promptly provide an accounting of the sale,

revenue, profits, and expenses of any commercialization, exploitation, or use of The Antenna Technology;

(d) An order requiring Defendants to return all title, rights, and interest in The Antenna Technology to Plaintiffs and to execute all documents necessary to accomplish such transfer; and

(e) Any other orders reasonably necessary to achieve justice and equity and to restore The Antenna Technology and any benefits derived therefrom to Plaintiffs.

## PRAYER

Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. For special damages according to proof and in excess of $75,000.
2. For general damages according to proof and in excess of $75,000.
3. For exemplary or punitive damages against Defendants according to proof.
4. For an order requiring Defendants, and each of them, to return The Antenna Technology and all benefits derived therefrom to Plaintiffs.
5. For any and all of the preliminary or permanent injunctive relief requested in Paragraph 66 above.
6. For reasonable attorney's fees.
7. For costs of suit.
8. For such other relief as the Court deems just and proper.

Dated: January 7, 2011　　　　ROPERS, MAJESKI, KOHN & BENTLEY

By: _____
STEPHAN A. BARBER
Attorneys for Plaintiffs

## JURY DEMAND

Plaintiffs herein demand a trial by jury.

Dated: January 7, 2011　　　　ROPERS, MAJESKI, KOHN & BENTLEY

By: _____
STEPHAN A. BARBER
Attorneys for Plaintiffs