CHRISTOPHER C. COOKE (SBN 142342)
JEFFREY W. KOBRICK (SBN 225750)
COOKE KOBRICK & WU LLP
177 Bovet Road, Suite 600
San Mateo, CA 94422
Email:  ccooke@ckwlaw.com
Email: jkobrick@ckwlaw.com
Tel: (650) 638-2370
Fax: (650) 350-4333

Attorneys for Defendants
STEVEN L. MYERS and MYERS
ENGINEERING INTERNATIONAL, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN JOSE DIVISION)

| | |
|---|---|
| JAMES R. JOHNSON, et al., | ) Case No.:  CV-11-00092 JF |
| | ) |
| Plaintiffs, | ) **DEFENDANTS' MEMORANDUM OF** |
| | ) **POINTS AND AUTHORITIES IN SUPPORT** |
| vs. | ) **OF MOTION TO DISMISS BASED ON (1)** |
| | ) **FORUM NON CONVENIENS (2) FAILURE** |
| STEVEN L. MYERS, et al., | ) **TO STATE A CLAIM (3) LACK OF** |
| | ) **SUBJECT MATTER JURISDICTION; (4)** |
| Defendants. | ) **LACK OF PERSONAL JURISDICTION** |
| | ) **AND (5) IMPROPER VENUE** |
| | ) |
| | ) Date:  June 17, 2011 |
| | ) Time: 9:00 a.m. |
| | ) Place: Courtroom 3, 5th Floor |

1

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................... 1

II.  STATEMENT OF FACTS ..................................................................................... 1

   A.   The Parties and Relevant Persons and Entities.................................................. 1

   B.   Vortis' Liquidation Petition in Scotland and the Sale of its Technology by the Scottish
   Liquidator ................................................................................................................ 2

   C.   Plaintiffs' Claims against Defendants ................................................................ 4

III. LEGAL ARGUMENT ........................................................................................... 5

   A.   Under the Doctrine of Forum Non Conveniens, The Court Should Decline to Exercise
   Jurisdiction over this Dispute Among Shareholders and Directors of a Scottish Corporation That is
   Governed By Scottish Law And That Arose in Scotland................................................ 6

      1.   Scotland is An Adequate Forum to Decide this Dispute ..................................... 6

      2.   The Balance of Public and Private Factors favors Dismissal ................................ 7

   B.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR RELIEF  AND THEIR FRAUD
   CLAIMS LACK SPECIFICITY ................................................................................ 11

      1.   Plaintiffs' Claims for Relief Fail Because Defendants Did Not Owe Vortis' Shareholders
      Any Fiduciary Duty ............................................................................................... 11

      2.   Plaintiffs Claims for Misrepresentation and *Concealment* Are Improperly Pleaded. .......... 12

   C.   THIS COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER
   PLAINTIFFS' CLAIMS .......................................................................................... 12

      1.   Plaintiffs Cannot Bring Derivative Claims Against Defendants Under the United
      Kingdom's Laws.................................................................................................... 13

      2.   Plaintiffs have not Shown that This Court Has Subject Matter Diversity Jurisdiction over
      any Individual Claims They Purport to Allege Because they Fail to Allege $75,000 in
      Controversy as to any Plaintiff ................................................................................ 14

   D.   THE COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANTS UNDER
   THE CALIFORNIA'S LONG-ARM STATUTE AND ASSERTING JURISDICTION WOULD
   VIOLATE DUE PROCESS .................................................................................... 15

   E.   VENUE IS NOT PROPER IN THIS DISTRICT BECAUSE A "SUBSTANTIAL"  PART OF
   THE CLAIM DID NOT ARISE HERE ..................................................................... 17

IV. CONCLUSION ..................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Arreola v. Wells Fargo Mortgage*, 2011 WL 1205249 (E.D. Cal. March 29, 2011) ------------------ 12

*Aschcroft v. Iqbal* 556 U.S. __, 129 S.Ct. 1937 (2009). ------------------------------------------------ 11

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007); -------------------------------------------------- 11

*Boston Telecommunications Group, Inc. v. Wood*, 588 F.3d 1201 (9th Cir. 2009)-------------------- 11

*Burger King v. Rudzewicz*, 471 U.S. 462 (1985) ---------------------------------------------------------- 16

*City of Harper Woods Employees' Retirement System v. Olver*, 577 F.Supp.2d 124, 128 (D.D.C. 2008)----------------------------------------------------------------------------------------------------- 1, 8, 13

*Commercial Lighting Prods, Inc. v. U.S. District Court,* 537 F.2d 1079 (9th Cir. 1976)------------- 19

*Creative Technology, Ltd. v. Aztech System Pte., Ltd*., 61 F.3d 696 (9th Cir. 1995) ---------------------6

*Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408 (2d Cir. 2005), ---------------------------------18, 19

*Facebook, Inc. v. MaxBounty, Inc.*, 2011 WL 1120046 (N.D. Cal. March 28, 2011). ----------------- 12

*Foss v. Harbottle* (1843) 2 Hare 461 ------------------------------------------------------------------------- 13

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)--------------------------------------------------------------8

*Id.* ----------------------------------------------------------------------------------------------------------------- 13

*In re BP PLC Derivative Litigation*, 507 F.Supp.2d 302 (S.D.N.Y 2007)--------------------------------- 13

*International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945) ------------------------------------ 16

*Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941) ------------------------------------------------8

*Koster v. (American) Lumbermen's Mutual Casualty Co.*, 330 U.S. 518 (1947). -----------------------9

*Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001). ----------------------------------------6, 7, 8, 9

*Martinez v. White*, 492 F.Supp.2d 1186 (N.D. Cal 2007 -----------------------------------------------6, 7

*Percival v. Wright* (1902) 2 Ch. 421 ---------------------------------------------------------------------------9

*Peskin v. Anderson* (2001) 1 BCLC 372------------------------------------------------------------------ 9, 11

*Roberts v. Gill & Co. Solicitors* (2010) UKSC 22 ------------------------------------------------------- 10

*Sarandi v. Breu*, 2009 WL 2871049 (N.D. Cal. Sept. 2, 2009------------------------------------------------8

*Scottish Air International v. British Caledonia Group PLC*, 81 F.3d 1224 (2d 1995) -------------------7

*Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422 (2007). ------------------6

*Swartz v. KPMG*, 476 F.3d 756, 764 (9th Cir. 2007).------------------------------------------------- 12

*Vaughn v. LJ Intern. Inc.*, 174 Cal.App. 4th 213 (2009).----------------------------------------- 8, 14

*Wishart v. Castlecroft Securities Ltd.*, (2009) SocCS CSIH_65, 2009 SCLR 696--------------------- 14

### STATUTES

28 U.S.C. §1391------------------------------------------------------------------------------- 17, 18, 19

Companies Act, 2006, c. 46, § 170(1 ----------------------------------------------------------------9

Companies Act, 2006, c. 46, § 170(1);------------------------------------------------------------- 11

Companies Act, 2006, c. 46, § 845(1)(a). ----------------------------------------------------------- 12

Companies Act, 2006, c. 46, §266------------------------------------------------------------------- 14

### OTHER AUTHORITIES

Kurt A. Geohre, Comment, *Is The Demand Requirement Obsolete? The United Kingdom Modernized its Shareholder Derivative Procedure and What The United States Can Learn from It*, 28 Wisc. Int'l L.J. 140, 157-58 (2010). ------------------------------------------------------------------- 14

### RULES

Federal Rule of Civil Procedure 12(b)(6).----------------------------------------------------------- 11

Rule 12(b)(1) of the Federal Rules of Civil Procedure ----------------------------------------------- 13

## I.    INTRODUCTION

This is a dispute among shareholders of a Scottish company over the sale of assets to one shareholder, pursuant to a bankruptcy liquidation of that company in Scotland, under Scottish law, by a Scottish-court appointed liquidator. The Court should decline to exercise jurisdiction and dismiss this case so that it can be heard, if at all, in Scotland, the rightful jurisdiction to decide this dispute. Plaintiffs' complaint is also defective and must be dismissed because they do not and cannot state a valid claim for relief under Scottish law.  Moreover, plaintiffs have not established that this Court has subject matter jurisdiction over this diversity action because they do not have standing to bring a derivative claim and they fail to allege that any of them or each of them has sustained damages of $75,000 or more as required by 28 U.S.C. §1332(a). Finally, plaintiffs have not shown and cannot show that personal jurisdiction or venue exists over defendants, who are both Florida residents. The Court should therefore dismiss Plaintiffs' complaint.

## II.    STATEMENT OF FACTS[1]

### A.    The Parties and Relevant Persons and Entities

Plaintiffs James R. Johnson, Terrence Sims, Heather Sims, Joslyn Johnson-Benning, Wilie Benning, Richard Gaddes, Robert Hartenstein, Deb Hartenstein, Todd D. Severin, Hans P. Schroeder, Stephen Schneider, Michael Bilich, Lance Goddard, Joan Goddard, Michael Moffet, James M. Ross, William Schneider and Valerie Schneider allege they are shareholders of Vortis Technologies Limited ("Vortis").  (Complaint ¶¶12, 16).

Vortis was a company organized under the laws of the United Kingdom and based in Glasgow, Scotland, that was attempting to develop and market an antenna technology known as the "Vortis."(Complaint, ¶¶12-16; Declaration of R. Campbell Shirlaw ("Shirlaw Dec.") ¶ 3). Plaintiffs had been shareholders of Meyers Johnson, Inc., "(MJI)", a California corporation that sought to develop the technology during 2003 through 2005, but they and other MJI shareholders exchanged

---

[1] This Statement of Facts is based on plaintiffs' allegations in their complaint and the declarations of R. Campbell Shirlaw and Christopher Cooke, which the Court can consider in connection with defendants' motion to dismiss based on lack of subject matter jurisdiction and forum non conveniens. *See City of Harper Woods Employees' Retirement System v. Olver*, 577 F.Supp.2d 124, 128 (D.D.C. 2008) ("*City of Harper Woods*").

their shares in MJI for shares of Vortis in or about December 2005, pursuant to a stock purchase agreement, MJI became a wholly owned subsidiary of Vortis. (Complaint, ¶16). Fourteen of the plaintiffs are residents of California, while five are residents of other states.  (Complaint, ¶¶ 2-4).

Plaintiff James R. Johnson was also Vortis' Chief Executive Officer, Managing Director, and sole member of Vortis' board of directors. In October 2006, Johnson relocated from Glasgow, Scotland to the United States, never to return, and, in December 2006, he suddenly resigned from his positions at Vortis, leaving the company with no member of its board of directors and no one running the company.  (Shirlaw Dec. ¶ 3).  Stephen Burke, Vortis' director of sales and acting Chief Operating Officer, and, at the time, a resident of Ireland, was appointed to Vortis' board of directors and became its managing director following Johnson's resignation.  R. Campbell Shirlaw, a chartered accountant based in Edinburgh, Scotland, became Vortis' corporate secretary.  (Shirlaw Dec. ¶ 4 and Exhibit A thereto).

Another significant shareholder of Vortis is the Scottish Enterprise fund, an entity of the Scottish government.  Scottish Enterprise had invested £100,000 in Vortis in exchange for an equity position and had also guaranteed a loan to Vortis through the Halifax Bank of Scotland ("HBOS") for the same amount.  (Shirlaw Dec. ¶ 4).

Dr. Myers is a shareholder of Vortis and is alleged to have been one of its directors and officers.  He and his corporation, Myers Engineering International, Inc. ("MEI"), the firm that eventually acquired the Vortis technology, are residents of Florida.  (Complaint ¶¶ 5-7, 17, 18).[2]

### B.   Vortis' Liquidation Petition in Scotland and the Sale of its Technology by the Scottish Liquidator

After Johnson resigned from Vortis in December 2006, his replacement, Stephen Burke, assisted by business advisor and chartered accountant, Campbell Shirlaw, attempted to turn the company around.  As of January 30, 2007, Vortis had no funds available for its use, no sales or other revenue, many unpaid bills, and was in default on its loan to HBOS, and needed an immediate

---

[2] Although plaintiffs allege that Dr. Myers was a director of Vortis, Dr. Myers never was formally appointed as one and in fact declined to serve in that capacity (he initially agreed but changed his mind when he found out about the potential liabilities this role could entail for him).  He was Vortis' Chief Science Officer, however.  For purposes of this motion only, we assume that plaintiffs' allegations about his role as a director are true.

infusion of capital to survive.  (Shirlaw Dec. ¶ 4:24-27 & Exhibit A thereto at 1). Ultimately, Burke and Shirlaw concluded that Vortis was and had been insolvent and could not be turned around. (Shirlaw Dec. ¶ 5:10-11). Vortis' insolvency meant that it could not lawfully continue to operate as a business in Scotland.  (Shirlaw Dec. ¶ 5:11-13).

On June 7, 2007, Vortis, as authorized by Burke, filed a Petition with the Court of Session in Edinburgh, Scotland, under Section 122 of the Insolvency Act of 1986, seeking the liquidation of the company. (Shirlaw Dec. ¶ 6:14-15 & Exhibit B thereto).  A liquidation proceeding is substantially similar to a bankruptcy proceeding in the United States and the purpose is to pay off the debts of the corporation by liquidating its assets. (Complaint ¶24). The Court of Session appointed Begbies Traynor LLP, a firm of chartered accountants and insolvency specialists, to serve as liquidators. (Shirlaw Dec. ¶ 16:15-17 & Exhibit B thereto; Complaint ¶¶ 23-24)). The principal person at Begbies Traynor who served as Vortis' liquidator was Ian Scott McGregor, a chartered accountant based in Glasgow, Scotland. Vortis' liquidation was completed by October 2008. (Shirlaw Dec. ¶ 6 & Exhibit C thereto). Vortis was formally dissolved in 2009.  (Shirlaw Dec. ¶ 9).

As part of Vortis' liquidation, Vortis' liquidator, Begbies Traynor, conducted an auction to sell its intellectual property, including the Vortis antenna technology. (Shirlaw Dec. ¶ 8 & Exhibit C at 3). The Vortis technology was the company's only significant asset.  (Complaint ¶ 25).  The liquidator sold the technology to MEI for £12,000, after publicizing the auction and soliciting bids for it from potentially interested parties, including Dr. Myers and plaintiff Johnson.  (Shirlaw Dec. ¶8: 11-15; Complaint ¶ 26).  According to the liquidator's report, MEI's bid for the technology "was the highest bid received" for Vortis' technology.  (Shirlaw Dec. Exhibit C at 3).

Records regarding Vortis' liquidation have been maintained at Begbies Traynor and Mr. McGregor, the former liquidator, currently works and resides in Glasgow, Scotland, as do other persons from his firm.  (Shirlaw Dec. ¶ 9; Declaration of Christopher C. Cooke ("Cooke Dec.") ¶¶ 3(c)-(e)). Mr. Shirlaw, Vortis' former corporate secretary and chartered accountant, resides in Edinburgh, Scotland, (Shirlaw Dec. ¶ 1; Cooke Dec. ¶ 3(b)) while Mr. Burke, the Vortis managing director who put the company into liquidation, presently resides in the Netherlands.  (Cooke Dec. ¶3(a)). Scottish Enterprise personnel who oversaw that entity's investment in Vortis and HBOS employees involved in that bank's loan to Vortis are in Scotland (Cooke Dec. ¶¶ 3(f)-(g)).  Other

significant witnesses to the parties' dispute believed to be in the United Kingdom include personnel

from Vodafone UK, Inc., a large cell phone company, who will testify to facts that caused Mr.

Johnson's departure from Vortis' board of directors and relocation to the United States.  (Cooke Dec.

¶ 3(h)).

### C.     Plaintiffs' Claims against Defendants

The core allegation in plaintiffs' complaint is that defendants essentially stole the Vortis

Antenna Technology from Vortis through the liquidation of the company and the sale of the

technology to MEI.  Plaintiffs' complaint alleges the following claims for relief against Dr. Myers

and MEI, largely based on this allegation:

(1) a claim for "breach of fiduciary duty" that Dr. Myer, as a "Director, Officer and/or key

employee" of Vortis allegedly owed Vortis "and its shareholders" (Complaint ¶ 33), based on his

actions that supposedly "tanked" Vortis and allowed him to purchase the antenna technology in the

liquidation proceedings (*id.* ¶34);

 (2) claims of "Misrepresentation and Concealment" (*id.* ¶¶ 36-38) and "Fraudulent

Misrepresentation and Concealment" (*id.* ¶¶ 39-41) for purportedly misrepresenting  Vortis' "ability

to obtain funding to market the Antenna Technology, the solvency or insolvency of [Vortis], the

ability of [Vortis] to pay debts that were actually legitimate, due and owing, and the purported

market value of the Antenna Technology" (*id.* ¶ 37);

(3) a claim for negligence (*id.* ¶¶42-44), based on Dr. Myers purportedly having "negligently

performed the duties and obligations imposed upon him by law as a director and officer" of Vortis

and by a contract with Vortis to assign the Antenna Technology to it and assist in its marketing (*id.* ¶

43);

(4) a claim for breach of contract (*id.* ¶¶45-49) based on Dr. Myers' purported failure to

perform obligations imposed on him by the Technology Assignment Agreement that he entered into

with MJI and assigned to Vortis (*id.* ¶¶ 46);

(5) a claim for alleged violations of the California Business and Professions Code, Section

17200, (*id.* ¶¶ 50-53) for "intentionally, recklessly, willfully, or negligently liquidating and

bankrupting" Vortis and "purporting to `purchase' the Antenna Technology, the only important asset of [Vortis]" (*id.* ¶51);

(6) a claim to "set aside" or "cancel" the sale of the Antenna Technology to MEI (*id.* ¶¶54-55), on the ground that this sale was "unlawful, unfair, and the product of Defendants' wrongdoing, breach of fiduciary duty and self-dealing" (*id.* ¶ 55);

(7) a claim for "conversion" (Complaint ¶ 56-58), on the ground that the "Antenna Technology was the property of [Vortis] and its shareholders" and that defendants wrongfully exercised control over and took possession of it (*id.* ¶ 57);

(8) a claim to recover the Antenna Technology from Defendants, based on California Corporations Code Section 2011(a)(1)(B) (*id.* ¶¶ 59-63) on the ground that it was not distributed "pro rata to the shareholders of Vortis" (*id.* ¶ 61); and

(9) a claim for "injunctive relief" (*id.* ¶¶ 64-66(e)) that  seeks, among other things, orders prohibiting defendants from using the Antenna Technology, requiring defendants to deposit all revenue derived from the Antenna Technology into an interest bearing account, and an order requiring defendants to return the Antenna Technology to plaintiffs (*id.* ¶¶ 66(b)-(d)).

## III.    LEGAL ARGUMENT

Plaintiffs' complaint suffers from five fatal flaws that require its dismissal.  First, under the doctrine of forum non conveniens, the Court should decline to exercise jurisdiction over what is a quintessentially European and Scottish dispute. The gravamen of the complaint is the sale of Vortis' technology to defendant MEI, which occurred pursuant a liquidation proceeding in Scotland, somehow harmed them.  These events occurred in Scotland and therefore the propriety of Vortis' liquidation and asset sale to MEI, and whether defendants breached any duties to Vortis in connection with such events, are all governed by Scottish law. Second, plaintiffs' complaint fails to state a claim upon which relief may be granted. Virtually all of the causes of action alleged in the complaint belong to the dissolved Scottish corporation, Vortis. Third, subject matter jurisdiction is lacking in this action.  Plaintiffs do not have standing to bring derivative claims on behalf of Vortis because they have not complied with the requirements of United Kingdom's laws applicable to such claims.  To the extent that plaintiffs are attempting to plead claims belonging to them and not to Vortis, plaintiffs have not properly pled that the amount in controversy requirement for diversity

jurisdiction under 28 USC §1332(a) is satisfied as to each of them. Fourth, plaintiffs have not pleaded facts showing that personal jurisdiction over defendants, both Florida residents, is proper in California.  Finally, plaintiffs have not pleaded that venue exists over defendants and cannot do so because a substantial part of the events giving rise to their claims occurred in Scotland, not in California.

> **A.**  **Under the Doctrine of Forum Non Conveniens, The Court Should Decline to Exercise Jurisdiction over this Dispute Among Shareholders and Directors of a Scottish Corporation That is Governed By Scottish Law And That Arose in Scotland**

The initial reason why the Court should dismiss plaintiffs' complaint is that this action should never have been filed in the United States and should be heard, if anywhere, in a Scottish court.  The doctrine of *forum non conveniens*, as applied to the facts of this lawsuit, compels the conclusion that the Court should dismiss this lawsuit.

Under the doctrine of *forum non conveniens*, a Court may decline to exercise jurisdiction over a lawsuit and dismiss a complaint that may be more properly heard in a foreign country's court. *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 429 (2007).  Because dismissal on this ground does not address the merits of the parties' dispute, the district court may dismiss an action based on *forum non conveniens* without first determining if it has personal or subject matter jurisdiction over the parties' dispute. *Id.* at 435-36.

"The party moving for *forum non conveniens* dismissal must demonstrate two things: (1) the existence of an adequate alternative forum; and (2) that the balance of relevant private and public interest factors favor dismissal." *Creative Technology, Ltd. v. Aztech System Pte., Ltd.*, 61 F.3d 696, 699 (9th Cir. 1995) (internal citations omitted); *see also Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). Here, both factors are present.

> **1.  Scotland is An Adequate Forum to Decide this Dispute**

"The defendant bears the burden of proving the existence of an adequate alternative forum." *Martinez v. White*, 492 F.Supp.2d 1186, 1190 (N.D. Cal 2007) (quoting *Lueck*, 236 F.3d at 1143). An alternative forum ordinarily exists when the defendant is amenable to service of process in the foreign forum. A foreign country is not an inadequate forum merely because its laws offer the

plaintiff a lesser remedy than he could expect to receive in the United States Court system. *Martinez*, 492 F.Supp.2d at 1190 (quoting *Lueck* 236 F.3d at 1143).  Rather, the foreign forum is only inadequate when it offers plaintiff no remedy at all.  *Lueck*, 236 F.3d at 1144.

Here, Scotland plainly is an adequate forum to hear this lawsuit as there is personal jurisdiction over both defendants in Scotland. Defendant Steven L. Myers is alleged to have been a director and officer of Vortis, a Scottish corporation based in Scotland and his company, MEI, is alleged to have participated in the allegedly improper sale of Vortis' assets to it.  Such actions would plainly subject Dr. Myers and MEI to personal jurisdiction in Scotland. Regardless, and to remove any doubt that such jurisdiction exists over them in Scotland, Dr. Myers and MEI will stipulate to accept jurisdiction of a Scottish court in Scotland with respect to this dispute with plaintiffs.

### 2.    The Balance of Public and Private Factors favors Dismissal

The second factor requires the court to assess whether the balance of public and private factors favors dismissal of the lawsuit.  Here, the public interest factors favor dismissal because, under the internal affairs doctrine, Scottish law applies to plaintiffs' claims that defendant Dr. Myers breached duties owed to Vortis and a jury in San Jose has no interest in deciding this controversy, which is based on the sale of Vortis' technology pursuant to liquidation proceedings in Scotland. The private interest factors favor dismissal because the most important witnesses in this case, personnel from the liquidation firm Begbies Traynor, are located in Scotland, the real party in interest in this dispute is Vortis, a corporation based in Scotland, and the records regarding the key events in this case are in Scotland.

### a)    Public Factors Favor Dismissal of the Dispute

The "[p]ublic interest factors include administrative difficulties stemming from court congestion, the undesirability of imposing jury duty "upon the people of a community which has no relation to the litigation;" the "local interest in having localized controversies decided at home"; and the appropriateness of holding the trial in a forum that is "at home" with the applicable law, "rather than having a court ... untangle problems in conflict of laws, and in law foreign to itself." *Scottish Air International v. British Caledonia Group* PLC, 81 F.3d 1224, 1232 (2d Cir. 1995) (applying factors

in affirming dismissal of derivative lawsuit against United Kingdom corporation) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)); *see also Lueck*, 236 F.3d at 1147.

In a diversity action, the federal court applies the forum state's conflict of law rules to determine what law governs the parties' claims and defenses.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  California, like most states, follows the "internal affairs" doctrine, a conflict of law principle that holds that the forum court must apply the laws of the jurisdiction under which the corporation is organized in examining claims involving a corporate director's alleged breach of duty to the corporation in derivative actions.  *See Vaughn v. LJ Intern. Inc.*, 174 Cal.App. 4th 213, 223 (2009). This doctrine applies even when, as here, the corporation is organized under the laws of another country. *Vaughn*, 174 Cal.App.4th at 223 (applying doctrine to derivative action involving corporation located in the British Virgin Islands) *accord City of Harper Woods*, 577 F.Supp.2d at 129 (in dismissing a derivative lawsuit involving a United Kingdom corporation, noting that "The internal affairs doctrine is not limited to the application of the laws of the States of the United States").

Here, applying these principles, it is clear that Scotland is the more appropriate forum to hear this dispute because its law, not California law, governs the claims in this dispute. Plaintiffs' claims that Dr. Myers breached fiduciary obligations to Vortis and them by essentially contriving the company's insolvency and conducting an improper sale of its technology to his firm MEI during Vortis' liquidation proceedings are garden variety claims of corporate mismanagement and self-dealing. *See, e.g.*, *Sarandi v. Breu*, 2009 WL 2871049 (N.D. Cal. Sept. 2, 2009) (under internal affairs doctrine, Swiss law governed claims of breach of fiduciary duty and negligence against director of Swiss corporation).  Resolving these claims necessarily will require the Court to decide issues of the duties and obligations of Dr. Myers under the laws of the United Kingdom and Scotland, as a director and officer of a company based in the United Kingdom. Moreover, the Court will also have to decide issues under the Insolvency Act of 1986, the United Kingdom statute that governed Vortis' liquidation and the liquidator's sale of Vortis' technology to MEI, to determine if Vortis was insolvent, as defendants contend, and whether this sale was proper. The United Kingdom, and Scotland in particular, has a much greater interest in deciding this case than California. *Sarandi*, 2009 WL 2871049 at *8 ("The instant dispute is governed by Swiss law, involves a Swiss entity and

addresses the conduct of primarily Swiss residents. As such, Switzerland has a much greater interest in this case as compared to California . . . Moreover, it will be more efficient for a Swiss court to interpret and apply its own law, versus this Court having to do so.")

**b)        Private Factors Favor Dismissal.**

In a *forum non conveniens* motion, "Courts consider the following private interest factors: (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Lueck*, 236 F.3d at 1145 (citations omitted). Ordinarily, a plaintiff's choice of forum is entitled to considerable deference. In a derivative action, however, an individual plaintiff's choice of forum is entitled to less deference because "the cause of action which such plaintiff brings before the court is not his own but the corporation's." *Koster v. (American) Lumbermen's Mutual Casualty Co.*, 330 U.S. 518, 522-23 (1947).

As a preliminary matter, the vast majority of plaintiffs' claims for relief are derivative claims because they belong to Vortis and are not claims that individual shareholders may directly assert. While plaintiffs repeatedly assert that Dr. Myers owed duties to Vortis and "its shareholders," —*see, e.g.,* Complaint, ¶ 33—this assertion is erroneous.  Under the United Kingdom's laws, a director owes fiduciary duties of care and loyalty only to the company, and does not owe any such duties to its individual shareholders.  *See* Companies Act, 2006, c. 46, § 170(1) ("The general duties specified in sections 171 to 177 are owed by a director of a company **to the company"**) (emphasis added)[3]; *see also Percival v. Wright* (1902) 2 Ch. 421, 425-26 (company's directors are not trustees for the individual shareholders and may purchase the shareholders' shares without disclosing to them pending negotiations to sell the company); *Peskin v. Anderson* (2001) 1 BCLC 372.  Thus, plaintiffs' choice of this Court as a forum is entitled to less deference.

Applying the private interest factors, all but one of them favors the United Kingdom in general, and Scotland in particular, as a forum over California.  Regarding residence of parties and

---

[3] For full text, see http://www.legislation.gov.uk/ukpga/2006/46/pdfs/ukpga_20060046_en.pdf.

witnesses (factor 1), access to physical evidence (factor 3), the ability to compel important witnesses to testify at trial (factor 4), and the cost of bringing such witnesses to trial (factor 5), all of these factors favor Scotland over California. One of the most important "parties" to this case is Vortis, a Scottish corporation that plaintiffs have not yet joined.[4]

The most important witnesses to the events leading to Vortis' liquidation are in the United Kingdom or Europe, not in California. Such witnesses include: (1) the firm that conducted Vortis' liquidation, Begbies Traynor and Ian Scott McGregor, the principal person at that firm who oversaw Vortis' liquidation, both located in Glasgow; (2) Campbell Shirlaw, a resident of Edinburgh and chartered accountant who served as Vortis' company secretary and, in that capacity, assisted its managing director (Burke) in running the business and concluding that Vortis should be liquidated; and (3) Stephen Burke, the managing director who decided to put Vortis into liquidation proceedings and who presently lives in the Netherlands.  (Cooke Dec. ¶¶ 3(a)-(g)).

Defendants' counsel has also identified several other important witnesses in United Kingdom, such as Dennis MacPhail, a representative of the Scottish Enterprise Fund, who lives in Scotland; and two Vodafone employees, who can testify to the circumstances relevant to why plaintiff Johnson resigned from Vortis' board of directors and his inability to serve as a proper derivative plaintiff on behalf of the other shareholders. (Cooke Dec. ¶ 3(h)).  None of these witnesses can be compelled to testify at a trial in the United States, while two of the most important witnesses —McGregor and Shirlaw—can be compelled to testify if the trial were held Scotland. And, obviously, the cost of bringing witnesses who live in Europe to testify at a trial will be much lower if the trial is held there than if it were held in California.[5] And, even though many of the plaintiffs allegedly live in California, they are not likely to be important witnesses to Vortis' liquidation or the events leading to the sale of its technology to MEI because they were allegedly shut out of the decision to liquidate

---

[4] The company must be joined as a party in a derivative lawsuit under United Kingdom's laws. *Roberts v. Gill & Co. Solicitors* (2010) UKSC 22, at ¶57 ("A derivative action is brought in representative form, and the company is joined as a defendant in order for it to be bound by any judgment and to receive the fruits (if any) of the judgment, and because the action has not been authorized by its board or general meeting").

[5] Indeed, defendant Steven Myers is the only important witness allegedly involved in Vortis' liquidation who does not live in Europe, and he lives in Florida, not California.

Vortis and to sell its technology. [6] Their number and presence in California is therefore less important.  *See Boston Telecommunications Group, Inc. v. Wood*, 588 F.3d 1201, 1209 (9th Cir. 2009) ("the focus for this private interest analysis "should not rest on the number of witnesses ... in each locale" but rather the court "should evaluate the materiality and importance of the anticipated ... witnesses' testimony and then determine their accessibility and convenience to the forum") (internal citations omitted).

A Scottish forum will ensure that the parties have better and more ready access to physical evidence (factor 3). Vortis' liquidation records, which are likely to be the key records in this action, are located at Begbies Traynor in Scotland, not California.  (Shirlaw Dec. ¶ 8; Cooke Dec. ¶ 3(c)).

Accordingly, the private interest factors also favor Scotland over California as the proper forum for this lawsuit.

### B.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR RELIEF  AND THEIR FRAUD CLAIMS LACK SPECIFICITY

Plaintiffs' claims are also legally deficient and must be dismissed for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).  In considering this type of motion, the Court must accept as true only the well-pleaded factual allegations in the complaint; the Court need not accept as true any legal conclusions or implausible factual allegations. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007); *Aschcroft v. Iqbal* 556 U.S. __, 129 S.Ct. 1937, 1949-50 (2009).

### 1.    Plaintiffs' Claims for Relief Fail Because Defendants Did Not Owe Vortis' Shareholders Any Fiduciary Duty

Plaintiffs' First, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth and Tenth Claims all rest on duties that Dr. Myers owed as a director or officer of Vortis and the technology's status as property of Vortis.  As discussed above, under the laws of the United Kingdom, a director or officer of a company owes a fiduciary duty only to the company and not to any individual shareholder. *See* Companies Act, 2006, c. 46, § 170(1); *Peskin v. Anderson* (2001) 1 BCLC 372.

---

[6] Plaintiff James Johnson, while an important witness on some issues in the case, is not alleged to have been involved in the decision to liquidate Vortis or to sell its technology to MEI.

Moreover, Plaintiffs' Ninth Claim, requesting a pro rata distribution of Vortis' technology to them under the California Corporations Code, is improper. As discussed above, California's conflict of law principles require the Court to apply the laws of the United Kingdom, not California.  Under the laws of the United Kingdom, Vortis could only make an in-kind distribution if the company "has profits available for distribution."  *See* Companies Act, 2006, c. 46, § 845(1)(a). Vortis had no such profits and was insolvent.  (Shirlaw Dec. ¶ 5, & Exhibit C).

### 2.    Plaintiffs Claims for Misrepresentation and Concealment Are Improperly Pleaded.

Plaintiffs' second and third claims, for misrepresentation and concealment, and fraudulent misrepresentation or concealment, (Complaint ¶¶ 36-44), are improperly pleaded and must be dismissed.  First, plaintiffs' allegations are woefully inadequate to satisfy the requirement in Federal Rule of Civil Procedure 9(b): " in alleging fraud or mistake to comply with Rule 9(b) and state a valid claim under Rule 12(b)(6), a party must state with particularity the circumstances constituting fraud or mistake."  Plaintiffs' bare-bones allegations fail to set forth the "'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Arreola v. Wells Fargo Mortgage*, 2011 WL 1205249 at *2 (E.D. Cal. March 29, 2011) (quoting *Swartz v. KPMG*, 476 F.3d 756, 764 (9th Cir. 2007).  Moreover, plaintiffs must, but fail, to plead how and why their reliance on defendants' alleged misrepresentations was justified. *Facebook, Inc. v. MaxBounty, Inc.*, 2011 WL 1120046 at *7 (N.D. Cal. March 28, 2011).  These claims must therefore be dismissed.

### C.    THIS COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS

There other major flaws with plaintiffs' legal claims that require the Court to dismiss this action.  First, to the extent that plaintiffs purport to assert claims belonging to Vortis, they do not have standing to raise such claims and they have not and cannot comply with United Kingdom's laws applicable to such claims.  Second, to the extent that plaintiffs purport to assert individual claims for relief, they do not and cannot plead that the $75,000 amount in controversy requirement for diversity jurisdiction is satisfied as to any of the plaintiffs. Because subject matter jurisdiction

does not exist, the Court should dismiss plaintiffs' complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### 1. Plaintiffs Cannot Bring Derivative Claims Against Defendants Under the United Kingdom's Laws

As discussed above, the vast majority of plaintiffs' purported claims for relief (eight of the ten claims pleaded in the complaint) are claims that belong to Vortis, and not to its individual shareholders. In essence, all claims resting on Dr. Myers' allegedly improper liquidation of Vortis and his firm's purchase of the Vortis Antenna Technology belong to Vortis, not to its shareholders. Such claims can be asserted, if at all, only derivatively, on behalf of Vortis.  Yet, the law is well developed that plaintiffs cannot bring a derivative action under the laws of the United Kingdom and assert such claims for conducting occurring before October 1, 2007 except in extraordinary circumstances not present here (involving oppression of a minority shareholder by a majority shareholder).  Two district courts, in extensive opinions examining the laws of the United Kingdom pertaining to derivative lawsuits, have so concluded.  *See In re BP PLC Derivative Litigation*, 507 F.Supp.2d 302 (S.D.N.Y 2007) ("*BP*") and *City of Harper Woods*, 577 F.Supp.2d 124.

As the district court in *BP* explains, derivative suits in the United Kingdom for actions occurring before October 1, 2007 are subject to the rule of *Foss v. Harbottle* (1843) 2 Hare 461, which holds that such lawsuits cannot be brought if the wrongs alleged are capable of ratification by a majority of the company's shareholders, and a director's alleged breaches of fiduciary duty, such as alleged here, are capable of such a ratification.  *See BP* 507 F.Supp.2d at 311. The only exception to this ban on derivative lawsuits possibly applicable is if the alleged wrong-doers are "in voting control of the company."  *Id.*  The *Foss v. Harbottle* rule still exists in the United Kingdom for any claim "based on acts or omissions by a director before 1 October 2007.'" *Id.*; *accord City of Harper Woods*, 577 F.Supp.2d at 137.

Here, plaintiffs have not and cannot allege that Dr. Myers or MEI or Stephen Burke were in "voting control" of Vortis, because they were not. Thus, to the extent that plaintiffs' claims depend on events occurring before October 1, 2007, they do not have standing to assert such claims on behalf of Vortis. Although plaintiffs' complaint is unclear on the precise dates when events occurred, Vortis' liquidation petition, which was filed in June 2007, and Dr. Myers' bid for the Vortis

Technology, which was submitted on September 25, 2007, both occurred before October 1, 2007. (*See Shirlaw Dec.* ¶ 6 & Exhibit B thereto).

Moreover, to the extent that plaintiffs' claims on behalf of Vortis are based on events occurring after October 1, 2007, they have not satisfied the requirements of the Companies Act of 2006 for bringing such claims.  A plaintiff may only bring such a claim in Scotland with leave of Court, and after satisfying the Court that he or she has a prima facie case of wrong-doing by the director that ought to proceed.  *See* Companies Act, 2006, c. 46, §266; *see also Wishart v. Castlecroft Securities Ltd.*, (2009) SocCS CSIH_65, 2009 SCLR 696.[7]  Under California law, this pre-screening requirement is considered a substantive legal requirement that a California court must apply.  *See Vaughn v. LJ Intern. Inc.*, 174 Cal.App.4th at 223 (holding that pre-screening of derivative lawsuit against British Virgin Islands corporation was substantive requirement that a California court must apply).  Accordingly, plaintiffs lack standing to assert any claim against defendants based on Vortis' liquidation or its sale of the Vortis Antenna Technology.

> **2.      Plaintiffs have not Shown that This Court Has Subject Matter Diversity Jurisdiction over any Individual Claims They Purport to Allege Because they Fail to Allege $75,000 in Controversy as to any Plaintiff**

Plaintiffs assert subject matter jurisdiction under 28 U.S.C. §1332(a)(1) on the basis of diversity of citizenship. Complaint, ¶ 10. Section 1332(a)(1) provides as follows:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between - (1) citizens of different States…

However, plaintiffs allege only that all of the plaintiffs collectively meet the jurisdictional amount, not that any plaintiff, or that each plaintiff, meets the amount. The Complaint alleges: "Plaintiffs have sustained very significant special and general damages in excess of $75,000…." (Complaint, ¶ 31).[8]

---

[7] The law in other parts of the United Kingdom is similar.  *See* Kurt A. Geohre, Comment, *Is The Demand Requirement Obsolete? The United Kingdom Modernized its Shareholder Derivative Procedure and What The United States Can Learn from It*, 28 Wisc. Int'l L.J. 140, 157-58 (2010).

[8] The Complaint contains similar allegations in paragraphs 35, 52 and 58, stating that "Plaintiffs have been damaged in a sum according to proof in excess of $75,000" and it requests damages in the

These allegations are insufficient for subject matter jurisdiction. For one thing, they do not allege that the amount exceeds $75,000 *"exclusive of interest and costs,"* as required by 28 U.S.C. §1332. (Emphasis added.) Moreover, they allege an amount in controversy collectively for all the plaintiffs, but do not allege that the jurisdictional amount is met for any individual plaintiff, or for each plaintiff. But under *Zahn v. International Paper Co.,* 414 U.S. 291, 294-295 (1973), any plaintiff who does not meet the jurisdictional amount must be dismissed from the case.

In *Zahn,* the Supreme Court stated that in a diversity case *each* plaintiff must meet the jurisdictional amount:

> The rule has been applied to forbid aggregation of claims where none of the claimants satisfies the jurisdictional amount, as was the case in *Scott v. Frazier,* 253 U.S. 243, 244 (1920), for example, where the Court stated the rule to be that "the amount in controversy must equal the jurisdictional sum *as to each complainant.*" (emphasis added).

*Id*. at 294-295. The Supreme Court further states in *Zahn* that "[this rule] *also requires dismissal of those litigants whose claims do not satisfy the jurisdictional amount,* even though other litigants assert claims sufficient to invoke the jurisdiction of the federal court. C*ark v. Paul Gray, Inc.*, 306 U.S. 583 (1939); *Stewart v. Dunham*, 115 U.S. 61, 64-65 (1885); *Bernards Township v. Stebbins*, 109 U.S. 341, 355 (1883)." *Zahn* at 295 (emphasis added). In the present case, *no* plaintiff alleges that he or she individually meets the jurisdictional amount. The Court therefore does not have subject matter jurisdiction over *any* of the plaintiffs.

### D.   THE COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANTS UNDER THE CALIFORNIA'S LONG-ARM STATUTE AND ASSERTING JURISDICTION WOULD VIOLATE DUE PROCESS

Dr. Myers is a Florida resident and MEI is a Florida corporation. (Complaint, ¶¶ 5, 7). Plaintiffs do not allege that defendants committed any acts in California. The Court therefore must dismiss this action for lack of personal jurisdiction over the defendants.

In diversity cases, "[d]istrict courts must... determine whether there is jurisdiction over the defendant under the relevant forum state's laws...  [and] whether an exercise of jurisdiction under these laws is consistent with federal due process requirements." *Bank Brussels v. Fiddler,* 171 F.3d

---

prayer for relief "for special damages according to proof and in excess of $75,000" and "for general damages according to proof and in excess of $75,000".  (Complaint, prayers for relief 1 and 2).

779, 784 (2d Cir. 1999)(Sotomayor, J.). In this case, California's long-arm statute does not reach the defendants and even if it did, the exercise of such jurisdiction would violate their constitutionally protected right to due process.

California Code of Civil Procedure §410.10, governing objections to jurisdiction, manifests an intent that the broadest possible jurisdiction should be exercised within the constitutional limits, one general principle of which is that a court may exercise personal jurisdiction over a nonresident so long as that person has such minimum contacts in the state that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Hill v Noble Drilling Corp.,* 61 Cal App.3d 258(1976).[9]

A leading recent California case is *Snowney v. Harrah's Entertainment, Inc.* 35 Cal. 4th 1054 (2005). The court upheld jurisdiction over a group of Nevada hotels in a class action suit by a California resident for failing to provide notice in their advertisements of an energy surcharge imposed on guests. The hotels had no offices, bank accounts or employees in California, but they advertised in California and obtained a significant percentage of their business from California residents.  In upholding jurisdiction, the court considered both the reach of the California statue (§ 410.10) and the U.S. Constitutional limits of *International Shoe* and its progeny.

The court stated that a court may exercise jurisdiction over a nonresident defendant only if three criteria are met: (1) the defendant has purposefully availed himself or herself of "the privilege [and benefits] of doing business in California"; (2) the plaintiff's claim is related to or arises out of the defendant's contacts with the forum; and (3) "the assertion of personal jurisdiction would comport with 'fair play and substantial justice'."

But unlike the hotels in *Snowney,* here the defendants have done nothing to purposefully avail themselves of "the privilege [and benefits] of doing business in California."

---

[9] The U.S. Constitutional limits for personal jurisdiction are articulated in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945). There the Supreme Court held that, for a state to assert personal jurisdiction over an out of state defendant, due process requires that he must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *See also Snowney,* 35 Cal. 4th at 1061(same test from *International Shoe* for both U.S. and California Constitutions); *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985)(under minimum contacts test, out of state defendant must have engaged in "significant activities within" the forum state or created "continuing obligations" between himself and residents of the forum. *Id.* at 476)

This case fits much more within the case of *Hill v Noble Drilling Corp.,* 61 Cal.3d 258 (1976), where the court rejected personal jurisdiction for tortious acts committed outside the state but the effects were felt in California because the plaintiffs resided here. In *Hill,* the plaintiff, a safety consultant who developed a program awarding oil company employees with green stamps for accident-free job time, sued its former client Noble, a Delaware corporation.  Hill alleged that Noble met with Hill's stamp supplier outside of California for the purpose of cutting Hill out of the equation. In California, such interference with contract is recognized as a tort, and Hill argued that since there was resulting damage in California, Noble should be subject to personal jurisdiction here. The court rejected that argument, holding that the tortious act itself must have occurred in California as well.

Similarly, here, while the plaintiffs allege that the defendants committed tortious acts, they do not allege any specific conduct by the defendants in California. Under *Hill,* the fact that the defendants' conduct may have affected some of the plaintiffs in California, because they reside here, is not enough for personal jurisdiction under the California long arm statute. Also, since the defendants have not had any significant contacts with this state, to subject them to personal jurisdiction here would violate their right to due process.

**E.     VENUE IS NOT PROPER IN THIS DISTRICT BECAUSE A "SUBSTANTIAL"   PART OF THE CLAIM DID NOT ARISE HERE**

Venue is not proper in this district under 28 U.S.C. §1391(a).  Plaintiffs' allegation in the Complaint concerning venue is facially insufficient. In paragraph 9 of the Complaint, plaintiffs allege that "many" of the acts or omissions alleged in the Complaint occurred in, or had an impact on, or affected "the State of California and California residents." This allegation concerns the state as a whole, not this district. As to this district, the Complaint (¶ 9) alleges only that "*some*" of the acts or conduct alleged in the complaint occurred in this district, not that a "substantial part" did. (Emphasis added.) [10]

---

[10]  The Complaint states in paragraph 9: "Many of the acts, conduct, and omissions of the Defendants, as alleged herein, occurred in, had an impact on, or affected the State of California and California residents.  Further, some of the acts, conduct, or omissions alleged herein occurred in the Northern District of California. Accordingly, the Northern District of California has jurisdiction over the Defendants and the subject matter of this action."

The venue statute for diversity cases, 28 U.S.C. §1391(a)(2), provides, however, that "*a substantial part* of the events or omissions giving rise to the claim" must occur in this district:

Sec. 1391. Venue generally

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) *a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred*, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.  (Emphasis added)

Under §1391(a)(2) this case may be brought only in the district "in which a substantial part of the events or omissions giving rise to the claim occurred."[11] However, the plaintiffs have not alleged that a "substantial part of the events giving rise to the claim occurred here," rather only that "some" have. "Some" is not enough.

Moreover, the plaintiffs do not allege any specifics as to what occurred in California that gave rise to the claims. As shown above, the plaintiffs' claims overwhelming arose from events that took place in the United Kingdom, or, as to Dr. Myers, in Florida, where he resides.  The Complaint alleges no specific act or omissions in this district, e.g., no specific meeting in California that Dr. Myers attended or nothing specific he did that gave rise to the claims.

Courts have held that where only "some" portion of the acts giving rise to the claim occur in the district, the "substantial part of the events" requirement of §1391(a) is not met. For example, in *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408 (2d Cir. 2005), the court held that because the board's transmittal into the district of half a dozen letters rejecting applicants to sit for its certification examination outside New York was only an insignificant part of the events giving rise to

---

[11] MEI (the corporate defendant), is not subject to personal jurisdiction here because it had no contacts here. But even if MEI was subject to personal jurisdiction in California, and could thus be deemed to "reside" here under §1391(c), since *all* the defendants do not reside in California, under §1391(a)(1) this case may not be brought in the district where any defendants resides *other than Florida,* where both defendants reside.

the claim, venue was therefore not proper. The court stated that the "substantial events or omissions" requirement of Section 1391(a)(2) has meaning in limiting a plaintiff's choice of forum:

> Nevertheless, the "substantial events or omissions" requirement does limit the forums available to plaintiffs. *See id.* at 357 (cautioning district courts to "take seriously the adjective 'substantial'" in discharging duty to "construe the venue statute strictly"). This is so because, as the Supreme Court explained before the amendment of section 1391, "in most instances, the purpose of statutorily defined venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great W. United Corp.,* 443 U.S. 173, 183-84, 61 L. Ed. 2d 464, 99 S. Ct. 2710 (1979)

428 F.3d at 432. *See also Commercial Lighting Prods, Inc. v. U.S. District Court,* 537 F.2d 1079, 1080 (9th Cir. 1976)(Venue under §1391(a)(2) not proper in a district that is inconvenient and where the contacts regarding the claim were "minimal")(Hufstedler, J.)

Given that both defendants in this case reside in Florida, and that plaintiffs do not even allege that "a substantial" part of the events giving rise to the claims took place here, the Northern District of California would be "an unfair or inconvenient place of trial," *Daniel*, and venue is not proper here under §1391(a).

## IV.     CONCLUSION

For the reasons set forth, the Court should dismiss plaintiffs' Complaint.

Dated:  April 5, 2011.                          Respectfully Submitted.

COOKE KOBRICK & WU LLP

By: /s/_____

Christopher C. Cooke

ATTORNEYS FOR DEFENDANTS