United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAMES JOHNSON, *et al.*,

    Plaintiffs,

v.

STEVEN MYERS dba MYERS ENGINEERING INTERNATIONAL, INC. and MYERS ENGINEERING INTERNATIONAL, INC.,

    Defendants.

    /

No. C 11-00092 WHA

**ORDER DENYING LEAVE TO FILE FIRST AMENDED COMPLAINT**

## INTRODUCTION

In this derivative action for breach of contract, plaintiffs request leave to file a first amended complaint. For the following reasons, the motion is **DENIED**.

## STATEMENT

Plaintiff James Johnson and defendant Steven Myers co-founded Myers-Johnson Inc. ("MJI"), a California corporation. All nineteen plaintiffs are former stockholders of MJI and Vortis Technology Ltd. ("VTL"), a Scotland company that purchased MJI around 2005. MJI focused exclusively on developing an Interferometric Antenna Array Technology ("the Antenna") for cellular phones (First Amd. Compl. ¶¶ 13–15, 19).

In December 2004, defendant Myers and MJI entered into a Technology Assignment Agreement ("TAA"). Under the TAA, defendant Myers would contribute $12,500 to MJI,

assign to MJI his intellectual property interests in the Antenna, and assume primary responsibility over developing the Antenna for MJI, all in exchange for MJI stock.  In January 2005, defendant Myers and plaintiff Johnson entered into a Partnership Business Development and Technology Transfer Agreement ("PBDTTA"), in which defendant Myers confirmed his commitment to developing and implementing the Antenna (*id*. at ¶¶ 14, 16, 18).

In 2005, VTL, a Scottish company, acquired MJI, purchasing all of MJI's stock and assets, including the Antenna, and allowing MJI stockholders to become stockholders in VTL (*id*. at ¶ 19).  At the hearing on January 26, 2012, plaintiffs' counsel stated that plaintiff Johnson had planned VTL's acquisition of MJI, and had come up with the idea of moving the company to Scotland.  Plaintiff Johnson confirmed this at a separate hearing on March 15.

Defendant Myers's obligations under the TAA and PBDTTA continued with VTL. Following the VTL acquisition, say plaintiffs, defendant Myers became remiss in developing the Antenna.  Consequently, VTL could not obtain the necessary financing to continue its operations.  In 2006 and 2007, according to plaintiffs, defendant Myers and his associate Stephen Burke had sole control over VTL's daily affairs, as well as any information presented to VTL's shareholders.  In May 2007, VTL's board of directors, consisting apparently of only defendant Myers and Mr. Burke, held a meeting in Glasgow, Scotland, declared VTL insolvent, and resolved to wind up VTL's affairs as soon as possible (*id*. at ¶¶ 21, 26).

Defendant Myers and Mr. Burke then initiated a formal liquidation proceeding in a Scottish court, whereupon I. Scott McGregor and Kenneth Pattullo were assigned as joint liquidators.  After initiating the liquidation proceeding, plaintiffs claim that defendant Myers and Mr. Burke presented financial documents claiming that the value of the Antenna was "uncertain," that VTL was approximately £1.811 million in debt, that VTL's largest creditor was defendant Myers Engineering International, Inc. ("MEI"), a Florida corporation owned solely or principally by defendant Myers, and that VTL's second largest creditor was defendant Myers himself.  During 2006 and 2007, defendants Myers and MEI allegedly interchanged separate debts to exaggerate VTL's financial condition to have its shareholders believe that the company was beyond saving (*id*. at ¶¶ 22–23, 26–28).

According to plaintiffs, during the liquidation proceeding, defendant Myers and Mr. Burke held a "secret and sealed" bidding process whereby they instructed the joint liquidators to sell the Antenna to defendants Myers and MEI for £12,000, a sum allegedly representing less than one percent of the Antenna's actual market value. On January 15, 2008, the joint liquidators informed plaintiffs that defendants Myers and MEI had purchased the Antenna at auction (*id.* at ¶¶ 29, 31).

Plaintiffs first filed suit in this district against defendants Myers and MEI on January 7, 2011, alleging seven claims for relief. On September 30, 2011, Judge Jeremy Fogel issued an order granting defendants' motion to dismiss with leave to amend as to plaintiffs' breach of contract claim and without leave to amend on all other claims. Because the breach of contract claim was derivative and California law controlled, it fell under Section 800 of the California Corporations Code. Specifically, plaintiffs did not meet the shareholder standing requirement of Section 800(b)(2) that plaintiffs allege in the complaint with particularity that they made a pre-filing demand on the board of directors to secure such action as plaintiffs desired, or that such demand was futile (Dkt. No. 26).

The initial complaint also named but failed to reference defendant MEI, and thus the breach of contract claim was dismissed as to defendant MEI for lack of personal jurisdiction, with leave to amend. The initial complaint was dismissed with leave to amend regarding the issue of intra-district venue because it was filed in San Jose, but because this action has been reassigned to San Francisco, venue is now proper (*id.* at 9, 18).

Plaintiffs now move for leave to file a first amended complaint, attempting to cure the defects in the previous complaint by showing that the Section 800(b)(2) demand requirement has been met and that defendant MEI is a properly named defendant because defendants MEI and Myers commingled funds such that reverse piercing is proper.

At the hearing on January 26, both parties brought attention to the fact that plaintiff Johnson initiated VTL's acquisition of MJI and the move to Scotland, and also of the possibility that plaintiff Johnson was fully aware of the "secret" liquidation and auction of the Antenna, and may have even placed a bid in that auction. An order issued requesting supplemental

3

briefing regarding the insolvency proceedings in Scotland, whether VTL's shareholders, including plaintiff Johnson, knew about the liquidation and the Antenna's sale, and if any demand was made upon the joint liquidators in Scotland.

Defendants submitted a declaration from Stuart Clubb, an expert in Scottish insolvency proceedings. Mr. Clubb explained that, during a liquidation, "if it was identified that directors were in breach of their fiduciary duties to the company, then it would be open for the liquidator to bring an action against the directors on behalf of the company . . ." If a creditor or shareholder was not satisfied with the liquidator's performance of its responsibilities, the creditor or shareholder could apply to a Scottish court to have an order issued requiring the liquidator to take the appropriate action (Dkt. No. 56 Exh. 3).

Defendants also submitted a declaration from I. Scott McGregor, one of the joint liquidators of VTL. He stated that no one made a claim that Myers or his firm had breached any contractual agreements, nor was any demand made that such a lawsuit be filed. Mr. McGregor testified that neither defendant Myers nor Mr. Burke had any role in determining the process by which VTL was liquidated. A technology consultant retained by the joint liquidators, not defendant Myers or Mr. Burke, determined that the value of the Antennae was "uncertain." According to Mr. McGregor, plaintiff Johnson submitted a cash bid for the Antenna, but because MEI (the only other bidder) made a larger bid, the Antenna was sold to MEI (Dkt. No. 56 Exh 1).

Defendant Myers submitted a declaration, attaching as an exhibit a string of emails between plaintiff Johnson and the Scottish liquidators. The emails show that plaintiff Johnson was fully aware of the liquidation as it was occurring. A July 2007 email from plaintiff Johnson states:

> I would like to file a complaint that Burke, as managing director, failed to deliver to the UK courts, a thorough Managing Director and Financial Report delivered to him and in his possession that would have provided you and the courts with accurate information prior to the courts granting liquidation June 28th. I consider this both a violation of fiduciary duty on his part and a cause of action. I will take your suggestions.

(Dkt. No. 57 Exh. B.)

4

Plaintiff Johnson submitted a declaration further demonstrating that he was aware of the liquidation, and was concerned with the lack of transparency regarding how the process was unfolding. He stated that he made demands on the liquidators with the information given him at the time, apparently referring to the July 2007 email. He claims, however, that he was not fully aware of the extent of the situation until "full forensics could be pulled together." It is unclear what these forensics entailed and when they were done. Plaintiff Johnson testified that, in response to his concerns, Mr. McGregor and Thomas McKay, Corporate Insolvency Administrator, told him verbally that "nothing could be done, it's in liquidation." Plaintiff Johnson testified that, after hearing this, he assumed any further demand would be futile. Plaintiff Johnson does not claim that he contacted any Scottish court regarding the liquidation (Dkt. No. 60).

This order follows full briefing and a hearing.

**ANALYSIS**

Under FRCP 15(a)(2), leave to amend should be given when justice so requires. Leave to amend may be denied, however, if the proposed amendment is futile or would be subject to dismissal. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendants are liable for the misconduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (citation omitted).

1.  **DEMAND REQUIREMENT**.

It is a fundamental principle of corporate governance that the directors of a corporation manage the business and affairs of the corporation, and accordingly, are responsible for deciding

5

whether to litigate a claim on the corporation's behalf. *Simmonds v. Credit Suisse Secs. LLC*, 638 F.3d 1072, 1088 (9th Cir. 2011). For this reason, a shareholder seeking to assert a claim on behalf of a corporation must first show through particularized facts that the shareholder made a demand on the directors to obtain the action desired. *Id.* at 1093. In a federal diversity action, the court looks to state law to determine whether the plaintiff has complied with the demand requirement or has sufficiently pleaded why making such a demand would be futile and should be excused. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991).

California Corporations Code Section 800(b) requires the following:

> No action may be instituted or maintained in the right of any domestic or foreign corporation by any holder of shares or voting trust certificates of the corporation unless both of the following conditions exist:
>
> (1) The plaintiff alleges in the complaint that the plaintiff was a shareholder, of record or beneficially . . . at the time of the transaction or any part thereof complained of . . .
>
> (2) The plaintiff alleges in the complaint with particularity plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort, and alleges further that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which plaintiff proposes to file.

Plaintiffs' initial complaint did not contain any allegations with respect to their efforts to demand that VTL's board of directors take action as required by Section 800(b)(2). In their amended complaint, plaintiffs allege that, because VTL no longer existed as a corporate entity, there was no board of directors to notify of their claims for breach of contract, and therefore demand was futile. However, in supplemental briefing, plaintiff Johnson now argues that he made a demand upon the Scottish liquidators regarding Mr. Burke, but when that demand went unanswered he thought all other demands would be futile.

Although VTL had ceased to exist by the time plaintiffs filed their initial complaint, plaintiffs had ample opportunity to make a demand for breach of contract upon the joint liquidators in Scotland while VTL was being dissolved. The parties' supplemental briefings show that plaintiff Johnson was fully aware of the liquidation as it was occurring, and

6

Mr. McGregor testified that plaintiff Johnson even made a bid of his own for the Antenna. Plaintiff Johnson was not in the dark during the liquidation, and so should have brought a claim for breach of contract at that time.

Plaintiff Johnson claims that he made a demand upon the Scottish liquidators. Yet he did not make any demand regarding a breach of contract cause of action against defendant Myers, as required by Section 800(b)(2). Plaintiff Johnson was involved in the move to Scotland and knew about the liquidation, and so should have been aware that defendant Myers may have been remiss in developing the Antenna as required by the TAA and PBDTTA contracts. He at least should have inquired about the issue at that time. Yet instead of making a proper demand on the Scottish liquidators for breach of contract, plaintiff Johnson waited three years to file the instant action.

Plaintiff Johnson also argues that after receiving word from the liquidators that "nothing could be done," plaintiff Johnson assumed any further demands made upon the liquidators would be futile. But if plaintiff Johnson had any issues with how defendant Myers had or had not fulfilled his contractual obligations, it was his duty to notify the Scottish courts if the joint liquidators were not taking proper action. Instead, plaintiff Johnson wrote to Mr. McKay in Scotland: "I am further delighted to have left [VTL] behind me after so many years of struggling to launch it . . . [M]y role with this group is over . . . I wish everyone the best of success in this new configuration" (Dkt. No. 60). Plaintiff Johnson spearheaded the effort to move the company to Scotland, and so should have known the rules by which liquidations and demands were done there.

Plaintiff Johnson stated in his declaration that he is the lead plaintiff and has taken responsibility over this action. No other shareholders have come forward showing that they took steps beyond those taken by plaintiff Johnson to make a demand upon VTL or the Scottish liquidators. Because neither plaintiffs' amended complaint nor plaintiff Johnson's supplemental briefing show that any shareholder made a demand upon VTL or the liquidators regarding a breach of contract claim, plaintiffs' motion is **DENIED**.

Accordingly, this order need not reach the issue of whether MEI's assets may be reached through reverse-veil piercing.

**CONCLUSION**

Plaintiffs were asked to give their best argument that they met the demand requirement. They have come up short. Because no claim for breach of contract can be made without showing the demand requirement was met, any further amendment would be futile. For the foregoing reasons, plaintiffs' motion for leave to file a first amended complaint is **DENIED** without leave to amend.

**IT IS SO ORDERED.**

Dated: March 21, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8